**MCFARLIN LLP**
Timothy G. McFarlin (State Bar No. 223378)
Email: tim@mcfarlinlaw.com
Fernando Leone (State Bar No. 147933)
Email: fernando@mcfarlinlaw.com
4 Park Plaza, Suite 1025
Irvine, California 92614
Telephone: (949) 544-2640
Fax: (949) 336-7612

Attorneys for Plaintiff,
ARTURO RODRIGUEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTURO RODRIGUEZ, an Individual;<br><br>           Plaintiff,<br><br>   v.<br><br>REAL TIME RESOLUTIONS, INC. as agent for RRA CP OPPORTUNITY TRUST 1, a Texas Corporation; ZBS LAW, LLP, a California Limited Liability Partnership; and DOES 1 through 100; Inclusive,<br><br>           Defendants. | Case No.: 5:22-cv-00453-JLS-SP<br><br>**PLAINTIFF ARTURO RODRIGUEZ'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPLY BRIEF TO DEFENDANTS' OPPOSITION TO PRELIMINARY INJUNCTION.**<br><br>Hearing:<br>Date: April 29, 2022<br>Time: 10:30 a.m.<br>Judge: Hon. Josephine L. Stanton<br>Dept.: 10A<br><br><br>Complaint Filed: February 16, 2022<br>Date Removed: March 14, 2022<br>Trial Date: Not Yet Set |

-1-

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Plaintiff ARTURO RODRIGUEZ is the owner of the real property commonly known as 28788 Phoenix Way, Sun City, CA 92586 (the "Property"). The Property is Plaintiff's principal residence and home.

Defendants REAL TIME RESOLUTIONS, INC., as agent for RRA CP OPPORTUNITY TRUST 1 ("RTR") and ZBS LAW, LLP ("ZBS") (collectively, "Defendants") are proceeding with a non-judicial foreclosure on Plaintiff's Property, after Defendant ZBS recorded a Notice of Default and Notice of Trustee Sale on the Property, in violation of the Homeowner Bill of Rights ("HBOR").

Plaintiff respectfully requests that this Court grant the Preliminary Injunction pending the outcome of this action because of Defendants' unlawful and reckless conduct.

## II. STATEMENT OF FACTS

In or around October 25, 2006 Plaintiff ARTURO RODRIGUEZ entered into a Deed of Trust with WMC Mortgage Corp. ("WMC") (the "Loan "). WMC agreed to loan the Plaintiff a sum of $343,200.00 secured by the Property through a second position Deed of Trust, then and now the primary residence and home for Plaintiff and his family. Mortgage Electronic Registration Systems, Inc. ("MERS") was the named beneficiary under the Deed of Trust. Westwood Associates was named as the trustee under the Deed of Trust.

Sometime thereafter, RTR began servicing the loan.

Plaintiff was able to maintain his mortgage payments on the Loan until 2008 when Plaintiff had a decrease of work. As a result, thereof, Plaintiff began to fall behind on his mortgage payments, but he continued to make payments on the Loan.

Between and on or around the fall of 2021, Defendants accepted all of the Plaintiff's payment and did not demand payment of any past due amounts.

///

1   Plaintiff never received an account statement or notice that servicing of the
2   Loan was transferred between 2008 and the fall of 2021.
3   On or around November 5, 2021, ZBS, on behalf of RTR, recorded a Notice
4   of Default and Election to Sell Under Deed of Trust ("Notice of Default" or "NOD")
5   on Plaintiff's Property.  However, Plaintiff was never provided with any notice or
6   recording informing Plaintiff that the previous trustee, Westwood Associates, had
7   assigned, transferred, or sold its rights as the trustee under the Deed of Trustee to
8   ZBS.  As such, the Notice of Default was recorded in violation of California Civil
9   Code § 2924, et seq.
10  Upon receiving the Notice of Default, Plaintiff immediately contacted RTR to
11  discuss his loss mitigation options.
12  Shortly thereafter, Plaintiff contacted RTR to attempt to confirm the debt.
13  Plaintiff called RTR to request the documents that would authenticate the loan;
14  however, Plaintiff was never provided the documents.
15  RTR failed and refused to give Plaintiff a loss mitigation application.
16  RTR itself, and through ZBS Law, LLP, has only sought to collect alleged
17  amounts allegedly due and owing or persuade Plaintiff to agree to a short sale.
18  On February 8, 2022, ZBS submitted A Notice of Trustee's Sale for filing.
19  Therefore, Plaintiff resorted to civil court for relief from the impending
20  wrongful foreclosure.
21  A controversy has arisen between Plaintiff and Defendants because of
22  Defendants' negligent misrepresentations preventing Plaintiff from curing their
23  default and extinguishing the transaction by operation of law.
24  The foregoing acts and material omissions of the Defendants were undertaken
25  willfully, persistently, intentionally, knowingly, and/or in gross or reckless disregard
26  of Plaintiff's notice and disclosure rights.  Defendants are acting in concert to deprive
27  Plaintiff of his civil rights by attempting to take his Property without due process of
28  law.

## III. ARGUMENTS AND AUTHORITIES

**Plaintiff Has Established Success on the Merits.**

Defendant's Opposition states that Plaintiff does not have a reasonable probability of success on the merits, and as such, the Preliminary Injunction should not be granted. However, as will be discussed below and as Plaintiff has outlined in his Motion for Preliminary Injunction, Plaintiff has established that she has a probability of success on the merits.

    1. *Plaintiff Will Succeed on His Claim Under California Civil Code 2923.5.*

Defendant argues that IT has not violated any code sections in proceeding with the foreclosure against Plaintiff's property. This is, again, patently false. California Civil Code Section 2923.5 provides that:

> (a) (1) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default pursuant to Section 2924 until both of the following:
>
>     (a) Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e).
>
>     (b) The mortgage servicer complies with paragraph (1) of subdivision (a) of Section 2924.18, if the borrower has provided a complete application as defined in subdivision (d) of Section 2924.18.
>
> (2) A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.
>
> (b) A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the

borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

(c) A mortgage servicer's loss mitigation personnel may participate by telephone during any contact required by this section.

(d) A borrower may designate, with consent given in writing, a HUD-certified housing counseling agency, attorney, or other advisor to discuss with the mortgage servicer, on the borrower's behalf, the borrower's financial situation and options for the borrower to avoid foreclosure. That contact made at the direction of the borrower shall satisfy the contact requirements of paragraph (2) of subdivision (a). Any loan modification or workout plan offered at the meeting by the mortgage servicer is subject to approval by the borrower.

(e) A notice of default may be recorded pursuant to Section 2924 when a mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower occurred despite the due diligence of the mortgage servicer. For purposes of this section, "due diligence" shall require and mean all of the following:

(1) A mortgage servicer shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(2) (A) After the letter has been sent, the mortgage servicer shall attempt to contact the borrower by telephone at least three times at different hours and on different days. Telephone calls shall be made to the primary telephone number on file.

(B) A mortgage servicer may attempt to contact a borrower using an automated system to dial borrowers, provided that, if the telephone call is answered, the call is connected to a live representative of the mortgage servicer.

(C) A mortgage servicer satisfies the telephone contact requirements of this paragraph:

(i) If it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.

(ii) If the borrower or his or her authorized agent notifies the mortgage servicer in writing to cease further communication with the borrower. The cease communication notification shall explicitly pertain to the mortgage loan account to be

effective. The cease communication notification shall be effective until the borrower or his or her authorized agent rescinds it in writing.

(3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgage servicer shall then send a certified letter, with return receipt requested.

(4) The mortgage servicer shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.

(5) The mortgage servicer has posted a prominent link on the homepage of its Internet Web site, if any, to the following information:

(A) Options that may be available to borrowers who are unable to afford their mortgage payments and who wish to avoid foreclosure, and instructions to borrowers advising them on steps to take to explore those options.

(B) A list of financial documents borrowers should collect and be prepared to present to the mortgage servicer when discussing options for avoiding foreclosure.

(C) A toll-free telephone number for borrowers who wish to discuss options for avoiding foreclosure with their mortgage servicer.

(D) The toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(g) This section shall apply only to entities described in subdivision (b) of Section 2924.18.

In this case, Plaintiff did not receive any of the requisite notices as outlined in California Civil Code § 2924.5(e) that states that servicers must send notices per the due diligence requirements. A trustee then may not file Notice of Default until (30) days after satisfying the due diligence requirements outlined above in 2923.5(e). Plaintiff never received any notice from either Defendant RTR nor Defendant ZBS. Therefore, the Notice of Default, and certainly the Notice of Trustee's Sale, recorded on Plaintiff's property is void.

As such, Plaintiff will likely succeed on the merits of his complaint as Defendants failed to satisfy the notice and due diligence requirements of California Civil Code § 2923.5. Therefore, Plaintiff respectfully requests that this court issue a preliminary injunction restraining Defendants RTR, ZBS, and its agents, servants, and employees, from proceeding with foreclosure and trustee's sale and throughout the pendency of this action.

### B. The Harm to Plaintiff Without Interim Relief Outweighs any Potential Harm to Defendants.

Courts have evaluated interim harm as the "consideration of such things as the inadequacy of other remedies, the degree of irreparable harm, and the necessity of preserving the status quo." Abrams v. St. John's Hospital & Health Center (1994) 25 Cal.App.4th 628, 636.  In addition, in "evaluating interim harm, the trial court compares the injury to Plaintiff in the absence of an injunction to the injury the defendant is likely to suffer if an injunction is issued. Shoemaker v. County of Los Angeles (1995) 37 Cal.App.4th 618, 633.

In this case, it is clear that Plaintiff has already suffered irreparable harm by Defendants' unauthorized and illegal conduct by dual tracking his loan modification. If Defendants are not enjoined from proceeding with the trustee's sale, Plaintiff will lose title to his home, be rendered homeless, and may lose rights in this action to any claim to the Property. Moreover, Plaintiff will be displaced from his home, which is unique in that it is Plaintiff's personal and primary residence. No amount of money damages can compensate Plaintiff for the loss of his home, even if only for a short time.

### C. Should the Court Issue a Preliminary Injunction, No Bond Should be Required.

California Civil Code section 2924.12(a)(2), states that "Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent has

correct and remedied the violation or violations giving rise to the action for injunctive relief." As mentioned above, there has been no determination that Defendant's violations of the HBOR have been corrected.

The Court has discretion to waive the bond requirement, in relation to potential harm to defendant if the bond is waived. CAL. CODE CIV. PROC. § 995.240. Courts have wide discretion in setting bond amounts, and "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Jorgensen v. Cassiday (9th Cir. 2003) 320 F.3d 906, 919.

Courts consider a variety of factors in determining bond amounts. Some use fair market rent of comparable property, the prior mortgage payment, the modified mortgage payment, or the amount of foreseeable damages incurred by the bank in delaying a foreclosure sale. Courts have declined to set a bond because it was not in the public interest to set one, and because the defendant bank's interest were secured by the Deed of Trust. Bitker v. Suntrust Mortg. Inc. (S.D. Cal. Mar. 29, 2013) 2013 WL 2450587, at 2, Bhandari v. Capital One, NA (N.D. Cal., Aug. 31, 2012) 2012 WL 3792766, at 2. Courts have waived a bond due to the lack of evidence that the servicer will suffer damages from the injunction. Greene v. Wells Fargo Bank, N.A. (N.D. Cal. Jan. 28, 2016) 2016 WL 360756, at 5, Lane v. Citimortgage (E.D. Cal. Oct. 7, 2014) 2014 WL 5036512, at 2. Other courts have waived the bond altogether. McKinley v. CitiMortgage, Inc. (E.D. Cal. Feb. 19, 2014) 2014 WL 651917, at 7. Regardless of the bond amount, the bond should not be set at the unpaid amount of the loan or the entire amount of arrearages. In a case entitled, Bever v. Cal-Western Reconveyance Corp., the court rejected a servicer's request for the full amount due on the loan as "tantamount to requiring tender" and "excessive." Bever v. Cal-Western Reconveyance Corp. (E.D. Cal., Oct. 2, 2013) 2013 WL 5493422, at 5.

In this case, there is no likelihood of harm to Defendants. Plaintiff resides in the Property and pursue this action in the hopes of retaining ownership and

possession of his Property. As such, Plaintiff has every incentive to maintain the Property and avoid any waste or harm to the Property. If Plaintiff is unsuccessful in his case, the Deed of Trust will still exist, and Defendant will be able to complete the trustee's sale. As such, Plaintiff respectfully requests this Court to waive the bond if the preliminary injunction is granted.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that this Court issue an order restraining Defendants and their agents, servants, and employees, from proceeding with foreclosure and trustee's sale set for Tuesday, April 26, 2022, and an order to show cause why a preliminary injunction should not be granted enjoining Defendants and its agents, servants, and employees from foreclosing on the Loan or selling the Property at a trustee's sale or otherwise during the pendency of this action.

DATED: April 20, 2022                    **MCFARLIN LLP**

By: /s/ Timothy G. McFarlin
_____
Timothy G. McFarlin
Fernando Leone
Attorney for Plaintiff
ARTURO RODRIGUEZ